OPINION
{¶ 1} Defendant-appellant Wendell Jones appeals from his conviction and sentence, following a negotiated no-contest plea, to one count of Possession of Heroin, in an amount exceeding five grams, but not exceeding ten grams. Jones contends that *Page 2 
the trial court erred in overruling his motion to suppress evidence, upon the ground that it was obtained as the result of an unlawful search and seizure.
 {¶ 2} We conclude that the trial court properly overruled Jones's motion to suppress. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} The facts are succinctly set forth by the trial court in its oral decision overruling the motion to suppress, as follows:
 {¶ 4} "Officer [Robert] Orndorff was dispatched to the Dayton Motor Motel located at 1939 North Keowee Street based upon an anonymous call reporting that either in or around room 44 of the Dayton Motor Motel a large black male was attacking a smaller white male and that, and that the black male, the African-American male possessed a handgun.
 {¶ 5} "Officer Orndorff, upon arrival at the motel, went to room 44 and knocked. Someone who was obviously within the room opened the door. Officer Orndorff indicated to that person why he was present and asked permission to enter the room. Permission to enter the room was granted and Officer Orndorff did in fact enter the room. It should be noted, it should be noted that as Officer Orndorff was at the entrance to the motel room, again room 44, he had heard voices emanating from what appeared to be the bathroom of the motel with that door being closed. He also observed a number of other individuals who were in the room.
 {¶ 6} "There really was not an indication of a precise number, but it was obviously more than one. There were several people in the room, in addition to the *Page 3 
person who answered the door, in addition to however many people were in the bathroom. [At one point, Orndorff testified that there were three persons in the motel room, apart from the persons in the bathroom, but it is not clear whether this number includes the person who answered Orndorff s knock.]
 {¶ 7} "Officer Orndorff upon entering the room went directly to the, what he suspected to be the door to the bathroom. It should be noted, and this is important, that as he progressed, as he walked to the bathroom door he did see two — in plain view, he saw two crack pipes and he immediately recognized that these were instruments that could be used for the smoking of crack cocaine. He came to that conclusion immediately based upon his experience as a Dayton police officer.
 {¶ 8} "Officer Orndorff, once he reached the bathroom door, attempted entry into the bathroom. That was something that was difficult because it appeared to Officer Orndorff that someone was holding the door preventing him from entering the room. Ultimately, however, he was able to enter the bathroom, and upon entering the bathroom he observed the Defendant Mr. Jones and also another occupant of the bathroom, a white female.
 {¶ 9} "He informed both the white female and Mr. Jones to exit the bathroom and they complied with that request. And then Officer Orndorff, once that was accomplished, went back into, went back into the bathroom, with his concern being that there could have been a weapon, something that could have caused him concern, could have been something dangerous in that bathroom that the occupants could have had easy access to and he went back into the bathroom to make sure that no such weapons were there. *Page 4 
 {¶ 10} "While he was in the bathroom, he observed, in plain view, the narcotics which led to the Indictments in this case. As a matter of fact, the record needs to — should reflect that it was a two-count Indictment, one count relating to crack cocaine found in the bathroom in plain view, a second, the second count of the Indictment relating to a quantity of heroin that was found in the bathroom."
 {¶ 11} There is evidence in the record to support the trial court's findings. One of the contraband objects retrieved from the bathroom was a suspected heroin capsule found floating in the toilet bowl, with the water still swirling as if the toilet had just been flushed. The others were two plastic baggies found, in plain view, in the drain of the bathtub.
 {¶ 12} Jones moved to suppress the evidence, contending that it was obtained as the result of an unlawful search and seizure. The trial court, after a hearing, overruled the motion to suppress. Thereafter, Jones entered into a plea bargain, wherein the charge of Possession of Crack Cocaine was dismissed, and Jones pled no contest to the charge of Possession of Heroin. Jones was sentenced to imprisonment for one year for Possession of Heroin.
 {¶ 13} From his conviction and sentence, Jones appeals.
 II {¶ 14} Jones's First Assignment of Error is as follows:
 {¶ 15} "THE CONVICTION SHOULD BE REVERSED BECAUSE THE OFFICER CONDUCTED A SEARCH WITHOUT PROBABLE CAUSE OR VALID CONSENT."
 {¶ 16} Jones concedes that Orndorff had consent to enter the motel room, but *Page 5 
contends that he exceeded that consent when he walked toward the bathroom, which he had described as being "located straight ahead," while he was initially talking with one of the occupants of the room to secure consent.
 {¶ 17} In our view, Orndorff, having received permission to enter the motel room, was not required, in the absence of some express limitation upon the scope of that permission, to remain just inside the outer door. A reasonable person, having received permission from an occupant of a motel room to enter the room, would regard himself as being free to continue some reasonable distance into the room.
 {¶ 18} Orndorff did testify that it was his purpose, upon entering the motel room, to secure entrance into the bathroom, forcibly if necessary. But we need not decide whether, at that point, Orndorff had either consent, or probable cause combined with exigent circumstances, to enter the bathroom. A reasonable police officer in Orndorff s position, with an anonymous report of an assault by a person armed with a gun, would want at least to make contact with the person or persons who were obviously within the bathroom, to determine whether the victim of that reported assault was in the bathroom, and possibly requiring assistance, especially in view of the motion of the bathroom door, which Orndorff took to be someone attempting to close the door, or to keep it closed. (Orndorff later determined that there was no working latch to the bathroom door, which made it difficult to keep closed, but he did not know this when he made his way to the bathroom door initially.)
 {¶ 19} While Orndorff was on his way to the bathroom door, before he forced it open, he noticed in plain view in the motel room two crack pipes, which he recognized as crack pipes as a result of his training as a police officer. Like the trial court, we deem *Page 6 
Orndorff s observation of the crack pipes, at a time when he was still acting reasonably within the scope of the permission he had received to enter the room, to be of significance.
 {¶ 20} Once Orndorff observed the crack pipes, he had direct evidence, within his own personal knowledge, of criminal activity within the motel room, to corroborate the anonymous report of criminal activity. To be sure, the evidence of criminal activity that Orndorff personally observed — the two crack pipes — was of different criminal activity from the criminal activity that had been anonymously reported, which was an assault upon a small white male by a large black male, who was armed with a gun. But both pieces of evidence were consistent with transactions involving unlawful drugs. Purchasers of crack cocaine can reasonably be expected to have crack pipes in their possession, and the propensity of persons involved in unlawful drug transactions to be armed with firearms has been noted by the Supreme Court of Ohio. See, e.g.,State v. Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶¶ 60 — 61.
 {¶ 21} As a result of Orndorff s observation of the crack pipes, he now had two independent indicia — the anonymous report and his own observation — of criminal activity within the motel room. Additionally, the motel itself had a reputation for drug activity. In our view, Orndorff now had probable cause to enter the bathroom, forcibly, if necessary, because it was now reasonably likely either that a victim of an ongoing assault was present in the bathroom, or that one or more persons in the bathroom was attempting to dispose of unlawful drugs. In either case, there would be exigent circumstances justifying an immediate search of the bathroom, without waiting for a warrant, either to protect the victim of the assault or to prevent the destruction of *Page 7 
evidence.
 {¶ 22} Thus, at the point that Orndorff forcibly entered the bathroom, he had probable cause and exigent circumstances to justify the entry, so that it was no longer necessary that he remain within the scope of the consent that had been given him to enter the motel room, which arguably was not broad enough to encompass a forcible entry of a bathroom that was apparently being opposed by an occupant of the bathroom.
 {¶ 23} Jones's First Assignment of Error is overruled.
 III {¶ 24} Jones's Second Assignment of Error is as follows:
 {¶ 25} "EVEN IF THE OFFICER WAS ENTITLED TO ENTER THE ROOM AND EVEN ENTER THE BATHROOM, HE NONETHELESS VIOLATED THE FOURTH AMENDMENT BY RETURNING TO THE BATHROOM AFTER BOTH SUBJECTS HAD BEEN REMOVED FROM IT AND AFTER HE HAD SATISFIED HIMSELF THAT THERE WERE NO WEAPONS INSIDE."
 {¶ 26} The trial court found, and Orndorff's testimony supports this finding, that when Orndorff went back into the bathroom after the removal of Jones and the female who were in the bathroom, he was attempting to satisfy himself that there was no weapon in the bathroom, thereby contradicting the factual predicate for this assignment of error. Orndorff testified that when he went into the bathroom after Jones and the female were removed from it:
 {¶ 27} "At the time I was looking for the gun that was mentioned involved in the dispatched call." *Page 8 
 {¶ 28} In view of the corroboration of the report of some criminal activity taking place in the motel room, represented by the crack pipes, the motel's reputation for drug activity, and the fact that a gun was included in the anonymous report, we conclude that it was reasonable for Orndorff to conduct a sweep of the bathroom to satisfy himself that there were no weapons therein. Orndorff testified that at the point that Jones and the female occupant of the bathroom had been removed from the bathroom and handcuffed, it was possible that the police would have left the motel room without making any arrests, the possession of the drug paraphernalia (the crack pipes) being merely a fourth-degree misdemeanor, and the heroin and crack cocaine not yet having been discovered. He also testified that there were three other persons in the motel room who were not handcuffed. He testified that these circumstances caused him to be concerned that if there were a gun in the bathroom, it could pose a threat to the safety of the officers in the motel room. In our view, this was a reasonable concern.
 {¶ 29} Jones's Second Assignment of Error is overruled.
 IV {¶ 30} Both of Jones's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.
Copies mailed to:
Mathias H. Heck, Jr.
Michele D. Phipps
Jon Paul Rion
Hon. Timothy N. O'Connell *Page 1